## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LEVY JOHNSON**                                   **CIVIL ACTION**

**versus**                                        **NO. 07-3370**

**STATE OF LOUISIANA**                            **SECTION: "B" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Levy Johnson, is a state prisoner incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana.  On February 18, 2004, he was convicted of two counts of aggravated battery and one count of aggravated burglary in violation of Louisiana law.[2]  On May 6, 2004, he was sentenced on each of the aggravated battery convictions to a term of ten years imprisonment and on the aggravated burglary conviction to a term of eighteen years imprisonment. It was ordered that his sentences run concurrently and that he be given credit for time served.[3] Petitioner's motion to reconsider sentence was subsequently granted on September 7, 2004, and it was ordered that he be eligible to earn "good time" in connection with his sentences.[4]  On November 29, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[5]  On November 9, 2006, the Louisiana Supreme Court denied his related writ application.[6]

---

[2]  State Rec., Vol. V of V, transcript of February 18, 2004, p. 163; State Rec., Vol. I of V, minute entry dated February 18, 2004.

[3]  State Rec., Vol. I of V, transcript of May 6, 2004, p. 33; State Rec., Vol. I of V, minute entry dated May 6, 2004.

[4]  State Rec., Vol. II of V, transcript of September 7, 2004, p. 12; State Rec., Vol. I of V, minute entry dated September 7, 2004.

[5]  State v. Johnson, No. 05-KA-285 (La. App. 5th Cir. Nov. 29, 2005) (unpublished); State Rec., Vol. III of V.

[6]  State ex rel. Johnson v. State, 941 So.2d 35 (La. 2006) (No. 2006-KH-1079);  State Rec., Vol. III of V.

After filing various unsuccessful post-conviction motions and applications in the state courts, petitioner filed the instant federal application for *habeas corpus* relief on or about April 27, 2007.[7]  In support of that federal application, he claimed:

1.     The trial court erred in denying petitioner's objections concerning his rights under the Double Jeopardy Clause and to the jury instructions; and

2.     Petitioner's sentences were excessive.

Subsequent to his filing of the initial federal application, petitioner filed an amended application asserting nine additional claims,[8] as well as a motion to amend his application to assert even more claims.[9]  However, on October 23, 2007, the Court notified petitioner that, because he had not exhausted his state court remedies by raising those additional claims before the Louisiana Supreme Court, he could not assert them in them in this federal *habeas* court in the first instance.[10]

---

[7] The petition was originally filed in the United States District Court for the Middle District of Louisiana and was subsequently transferred to this Court.  The state concedes that petitioner's federal application was timely filed.  Rec. Doc. 13, p. 3.

[8] Rec. Doc. 4.

[9] Rec. Doc. 10.

[10]   Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts.  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).  A federal court may raise *sua sponte* the lack of exhaustion.  Magouirk v. Phillips, 144 F.3d 348, 357 (5th Cir. 1998); see also Tigner v. Cockrell, 264 F.3d 521, 526 n.3 (5th Cir. 2001); Shute v. Texas, 117 F.3d 233, 237 (5th Cir. 1997).

Accordingly, the Court further notified petitioner that he had two options.  First, he could withdraw his additional claims and proceed on only the two claims in his original application.  If he chose that option, the undersigned would issue a Report and Recommendation addressing the merits of those two claims. Second, he could proceed on both the two claims in his original application and the additional claims set forth in his supplemental filings. If he chose that option, the undersigned would issue a report recommending that petitioner's federal application be dismissed without prejudice as a mixed petition.[11]  It was ordered that petitioner inform the Court of which of those options he preferred.[12]

Petitioner subsequently notified the Court that he elected the former option and therefore wanted to withdraw his unexhausted claims.[13]  Accordingly, pursuant to petitioner's express wishes, the Court will consider herein only the two claims asserted in his original federal application.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the

---

[11]  See Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

[12]  Rec. Doc. 14.

[13]  Rec. Doc. 16.

claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481,

485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning.  A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides
> a case differently than we have done on a set of materially
> indistinguishable facts.   The court may grant relief under the
> "unreasonable application" clause if the state court correctly
> identifies the governing legal principle from our decisions but
> unreasonably applies it to the facts of the particular case.  The focus
> of the latter inquiry is on whether the state court's application of
> clearly established federal law is objectively unreasonable, and we
> stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an
> unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court

will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

- 5 -

Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> At the trial the victims, Darlene Horton and Claude Eugene, gave the following account of the crime. At about 8:35 p.m. on February 24, 2003, Darlene Horton heard a knock at her door. She went to the door, but did not open it. The visitor asked for "Donna." Ms. Horton stated that no one by that name lived in the home. She did not open the door because she could not see who the visitor was and did not recognize the voice. Instead, she directed the visitor to the apartment complex office. Immediately thereafter, the person crashed through the door and grabbed Ms. Horton. She recognized the attacker as Levy Johnson, a man she had previously dated but broke up with when he became abusive. He had a knife and cut her several times.
>
> Claude Eugene, a friend who was in the bathroom at the time of the attack, heard Ms. Horton scream and came out to find defendant holding Ms. Horton by the neck and "jugging at her" with an unknown object. Eugene tried to intervene and a struggle ensued. In the course of the struggle, Eugene was stabbed several times.
>
> Meanwhile, Ms. Horton called 911. She then picked up a board from the broken door frame and hit defendant, forcing him to release Eugene. Defendant chased Ms. Horton into her bedroom, where he held a knife to her and told her he "ought to kill her." Ms. Horton ran out of the apartment and flagged down an approaching police officer.
>
> Eugene had gone out to his truck to get a rag to bind his wounds and a shovel for protection. As he approached the apartment, he saw a police officer. The officer ordered Eugene to put down the shovel, and he immediately complied. The officer also ordered defendant, who was approaching Ms. Horton in an aggressive manner, to drop the knife. At first the defendant did not comply. However, at the second command, defendant did as he was told and was handcuffed.
>
> Emergency medical personnel arrived shortly thereafter and treated Ms. Horton and Eugene for lacerations. They were taken to the hospital, treated and released. Defendant was also taken to the hospital, and subsequently to jail.

Defendant gave a statement to police in which he stated he had been in a ten-year relationship with Ms. Horton that recently ended. He went to her apartment to talk to her about her son. She opened the door, but said she did not want to talk to him. As she was closing the door, defendant saw Eugene and forced his way into the apartment. Defendant claimed Ms. Horton had a knife which she dropped after the two "tussled." At this point, Eugene began hitting defendant with a broken door molding and the two men fought. Defendant thought Eugene had a gun, so he fought against him. He then followed Ms. Horton outside the apartment and then back inside to tell her he was not trying to hurt her. When the two went back outside, defendant saw Eugene approaching with a shovel and a police officer with a gun. Defendant dropped the knife he was holding when commanded to do so by the police officer.[14]

<u>Jury Instructions/Double Jeopardy</u>

Petitioner's first claim raises an interrelated challenge to the jury instructions and a double jeopardy issue. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected petitioner's claim, holding:

[D]efendant asserts the trial judge erred "in denying all of the defendant's objections to the double jeopardy issues and uncharged offenses in the jury instructions." Specifically, defendant claims the trial judge erroneously instructed the jury that the enhancing element of aggravated burglary included entering the premises with the specific intent to commit attempted second degree murder or aggravated battery. Defendant contends the trial court erred in enumerating specific felonies. Defendant asserts this definition of aggravated burglary went beyond the charged offense in the indictment where the State claimed the aggravated burglary was committed when defendant entered Ms. Horton's apartment while armed with a dangerous weapon or armed himself after entering. As such, defendant contends this definition of aggravated burglary allowed the jury to convict him of an uncharged offense. Additionally, defendant alleges the erroneous jury charge subjected

---

[14]    <u>State v. Johnson</u>, No. 05-KA-285, at 2-4 (La. App. 5th Cir. Nov. 29, 2005) (unpublished); State Rec., Vol. III of V.

him to double jeopardy because it punished him twice for the same offense; namely, aggravated battery as an offense (as to Darlene Horton) and as an element of aggravated burglary.

The State responds defendant was not exposed to double jeopardy because the State never made the commission of a battery an element of the aggravated burglary charge. It also contends all essential elements of aggravated burglary were proven without relying on any of the elements of second degree murder, which the State maintains it proved under the specific intent theory. The State argues its intent to use, and its ultimate proof of specific intent murder, made aggravated burglary an independent element of the attempted second degree murder charge. Thus, the State maintains defendant was not exposed to double jeopardy.

Defendant first asserts the trial judge's jury charge pertaining to aggravated burglary was erroneous because it went beyond the charged offense. In the indictment, the State charged defendant with aggravated burglary by the "unauthorized entering of the property of Darlene Horton, located at 1952 Ormond Blvd, Apt. B 114, Destrehan, La. where a person is present, with the intent to commit a felony or any theft therein while the offender is armed with a dangerous weapon."

Aggravated burglary is defined in La.R.S. 14:60 as:

> ... the unauthorized entering of any inhabited dwelling ... where a person is present, with the intent to commit a felony or any theft therein, if the offender,
>
> (1) Is armed with a dangerous weapon; or
> (2) After entering arms himself with a dangerous weapon; or
> (3) Commits a battery upon any person while in such place, or in entering or leaving such place.

The indictment made it clear that the State was relying on defendant being armed with a dangerous weapon during the offense, subsections (1) or (2), as opposed to committing a battery, subsection (3). [FN]

> [FN] Specifically, count three of the indictment charged that defendant, "committed the offense of R.S. 14:60 AGGRAVATED BURGLARY, by the unauthorized entering of the property of Darlene

> Horton, located at 1952 Ormond Blvd. Apt. B 114, Detrehan (sic), La. where a person is present, with the intent to commit a felony or any theft therein while the offender is armed with a dangerous weapon."

In giving the initial jury instructions, the trial judge defined aggravated burglary as, "... the unauthorized entering of any inhibited [sic] dwelling, where a person is present, with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon." Prior to charging the jury, the trial judge held a conference outside the presence of the jury to discuss jury charges. During the conference the trial judge stated it was going to charge the jury that an essential element of aggravated burglary included that the defendant entered with the specific intent to commit attempted second degree murder, attempted manslaughter, or aggravated battery. The trial judge enumerated the felonies because they were the applicable felonies in the present case, one being the charged crime of attempted second degree murder, and the two others being responsive verdicts to attempted second degree murder. Defense counsel did not object to the proposed jury charge. The jury was then brought back into the courtroom and charged accordingly. The trial judge instructed the jury that an essential element of aggravated burglary was that defendant entered the premises with the specific intent to commit attempted second degree murder, attempted manslaughter, or aggravated battery. Again, defense counsel did not object.

Defendant's argument is that the trial judge erred in specifying that aggravated battery was an essential element of aggravated burglary since the indictment charged aggravated burglary based only on defendant being armed with a dangerous weapon and not because he committed a battery. He argues the inclusion of aggravated battery in the jury instruction prevented him an opportunity to defend because he did not know he had to defend against the allegation that he entered the premises with the intent to commit aggravated battery. Defendant further claims the enumeration of aggravated battery in the jury instruction relieved the State of its burden of proving the charged offense that defendant entered the premises while armed with a dangerous weapon.

Under La.C.Cr.P. art. 801(C):

> [a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an

- 9 -

objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error.

La.C.Cr.P. art. 841(A) provides that an error cannot be availed of after a verdict unless an objection was made at the time the error occurred.  Generally, the failure to raise a contemporaneous objection to an allegedly erroneous jury charge precludes appellate review of the matter.  State v. Dauzat, 02-1187 (La. App. 5 Cir. 3/25/03), 844 So.2d 159, 167.  However, in State v. Hubbard, 97-916 (La. App. 5 Cir. 1/27/98), 708 So.2d 1099, 1107, writ denied, 98-643 (La. 8/28/98), 723 So.2d 415, this Court stated that a jury instruction may be reviewed, despite the absence of a contemporaneous objection, when:  1) the error violates fundamental requirements of due process, and 2) the record is sufficient to establish the error without the need for a post-trial evidentiary hearing.  Because defendant also claims the alleged erroneous jury instruction subjected him to double jeopardy, the exception to the contemporaneous objection rule is applicable.

The standard for evaluating jury instruction is whether, when reading the charges as a whole, reasonable persons of ordinary intelligence would understand the charge.  State v. West, 568 So.2d 1019, 1023 (La. 1990).  "A verdict will not be set aside because of a challenged jury charge unless such portion, when considered in the context of the entire charge, is determined to be erroneous and prejudicial."  State v. Hill, 98-1087 (La. App. 5 Cir. 8/31/99), 742 So.2d 690, 698, writ denied, 99-2848 (La. 3/24/00), 758 So.2d 147.

A review of the complete jury charge, shows there was no error as to the charge for aggravated burglary.  In accordance with the statute, the trial judge instructed the jury that in order to find defendant guilty of aggravated burglary, it had to find defendant; 1) entered an inhabited dwelling, 2) without authorization, 3) while a person was present in the dwelling, 4) with the intent to commit a felony, and 5) while armed with a dangerous weapon or armed himself with a dangerous weapon after entering.

Contrary to defendant's assertion, the trial court did not instruct the jury as to the third subsection of the statute, which provides a defendant can be guilty of aggravated burglary if he commits a battery while in the dwelling, or in entering or leaving the place, even though he is not armed with a dangerous weapon. Reading the jury charges in context, it is clear that the trial judge's reference to aggravated battery was simply to enumerate the

- 10 -

applicable felonies relating to the essential element of the offense that requires defendant have specific intent to commit a felony or theft within the dwelling.

During the jury charge conference, the trial court explained his inclusion of aggravated battery in the enumerated felonies by stating it was a responsive verdict to attempted second degree murder. There is no error in enumerating the applicable felonies. The trial judge was simply listing the obvious felonies that defendant could have intended to commit based on the evidence presented. Throughout the entire trial, it was clear the State intended to prove aggravated burglary on the basis defendant was armed with a dangerous weapon. During voir dire, the State defined aggravated burglary as involving "someone breaking into a home where somebody lives and someone is home when they break in, and the person who breaks in has a dangerous weapon once they get inside." Even during closing arguments, the State emphasized and relied on the evidence that showed defendant was armed with a dangerous weapon in Ms. Horton's apartment. The State never once suggested defendant was guilty of aggravated burglary because he had committed a battery.

Defendant also argues the jury instruction on aggravated burglary which referenced aggravated battery exposed him to double jeopardy. He asserts the jury was instructed that it could use aggravated battery both as an offense (a lesser included offense of attempted second degree murder) and as an enhancing element of aggravated burglary. Defendant maintains the jury's verdict of aggravated battery as a responsive verdict to the charge of attempted second degree murder shows the jury did not accept the "specific intent" theory of murder under which the State proceeded and, thereby, subjected him to double jeopardy.

Double jeopardy is most properly raised in a motion to quash. State v. Austin, 04-993 (La. App. 5 Cir. 3/1/05), 900 So.2d 867, 884. Although defendant filed a motion to quash, it was based on vagueness and not double jeopardy. Nonetheless, the issue is still properly before this Court because double jeopardy can be raised at any time, but only once. State v. Gordon, 00-1013 (La. App. 5 Cir. 11/27/01), 803 So.2d 131, 150, writ denied, 02-0362 (La. 12/19/02), 833 So.2d 336, and 02-0209 (La. 2/14/03), 836 So.2d 134.

The Fifth Amendment to the United States Constitution, and Article I, § 15 of the Louisiana Constitution, prohibit placing a person twice in jeopardy of life or limb for the same offense. See also, La.C.Cr.P. art. 591. Double jeopardy protects an accused not

- 11 -

only from a second prosecution for the same offense, but also multiple punishments for the same criminal act.  State v. Austin, *supra* at 884.  When proof of a felony is an essential element of attempted murder, double jeopardy precludes conviction and punishment of the defendant for both the attempted murder and the underlying felony.  However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principles of double jeopardy.  Id.  As such, it is not double jeopardy to prosecute specific intent murder and aggravated burglary.  See; State v. Pendleton, 96-367 (La. App. 5 Cir. 5/28/97), 696 So.2d 144, 154, writ denied, 97-1714 (La. 12/19/97), 706 So.2d 450.

Prior to trial, defendant filed a motion to quash counts one and two, attempted second degree murder of Darlene Horton and Claude Eugene, on the basis of vagueness because the indictment did not specify whether the State was proceeding under the felony murder theory or the specific intent theory.

During a hearing on the motion to quash, the State orally specified that it was proceeding under the specific intent theory.  At trial, the trial judge instructed the jury solely on the specific intent theory of attempted second degree murder during both the initial jury instructions and the jury charges.  Because it was clear the State was proceeding under the specific intent to kill theory of second degree murder, defendant was not exposed to double jeopardy in the initial prosecution for both attempted second degree murder and aggravated burglary.

Defendant agrees there was no double jeopardy problem with the initial prosecution, but maintains the jury instruction on aggravated burglary that referenced aggravated battery exposed him to double jeopardy.  The fact that defendant was convicted of aggravated battery, as a lesser offense of attempted second degree murder, and aggravated burglary raises the issue of whether he was exposed to double jeopardy based on the actual verdicts.

In State v. Powell, 598 So.2d 454 (La. App. 2 Cir. 1992), writ denied, 605 So.2d 1089 (La. 1992), the Second Circuit determined that in reviewing convictions for double jeopardy, the verdicts actually rendered, in addition to the charged offenses, must be analyzed for double jeopardy.

Louisiana courts have used two tests in examining violations of double jeopardy.  The "distinct fact" test, commonly referred to as the Blockburger test, is taken from Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932) as follows:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

The second test is the "same evidence" test.  In <u>State v. Steele</u>, 387 So.2d 1175, 1177 (La. 1980), the Louisiana Supreme Court explained that test as follows:

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.  The test depends on the evidence necessary for conviction, not all the evidence introduced at trial....

The "same evidence" test is broader than <u>Blockburger</u>, "the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct."  <u>State v. Steele</u>, *supra* at 1177. Although the Louisiana Supreme Court has accepted both the <u>Blockburger</u> test and the "same evidence" test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims.  <u>State v. Miller</u>, 571 So.2d 603, 606 (La. 1990); <u>State v. Barton</u>, 02-163 (La. App. 5 Cir. 9/30/03), 857 So.2d 1189, 1201-1202, <u>writ denied</u>, 03-3012 (La. 2/20/04), 866 So.2d 817.

In <u>State v. Solomon</u>, 379 So.2d 1078 (La. 1980), the Louisiana Supreme Court was faced with the issue of whether defendant's convictions of simple burglary and theft constituted double jeopardy.  The defendant had broken into a police officer's vehicle and stolen a watch.  The Supreme Court applied the "same evidence" test and concluded that there was no double jeopardy violation.  The court explained "... that the exact same evidence is not required for a conviction of the defendant on both the burglary and theft charges because a conviction of burglary requires the additional proof of an unauthorized entry with the intent to commit a felony theft therein." <u>Id</u>. at 1079-1080.  It further stated that the two charges were not based on the exact same conduct.  It explained that "[t]he crime of burglary was completed upon entry into the car with the

- 13 -

intent to commit the theft therein, whereas the theft did not occur until the defendant actually took the watch from the glove compartment." The court concluded "[t]his distinction makes it clear that the burglary of the automobile and the theft of the watch were two separate and distinct offenses and therefore, the conviction of one would not bar a conviction on the other on the grounds that the defendant would be placed twice in jeopardy for the same offense."

Additionally, in State v. Mills, 505 So.2d 933 (La. App. 2 Cir. 1987), writ denied, 508 So.2d 65 (La. 1987), the Second Circuit found that defendant's convictions for aggravated burglary and aggravated rape were not barred by double jeopardy. In so concluding, the court stated that the crimes of aggravated burglary and aggravated rape did not contain identical elements and that evidence necessary to support an aggravated burglary conviction would not have also supported an aggravated rape conviction. The court explained that in order to prove aggravated burglary, the state had to prove that defendant made an unauthorized entry of the victim's home with the intent to commit a theft or felony and one of three aggravating circumstances listed in La. R.S. 14:60. The court stated that because the State had only to prove intent to commit a felony within the victim's home at the moment of unauthorized entry, and not the actual felony itself, the crimes of aggravated burglary and aggravated rape did not contain identical elements.

Likewise, in the present case, the State needed only to prove defendant had the intent to commit a felony within Ms. Horton's home at the time of unauthorized entry and not the completion of the actual felony to support the aggravated burglary conviction. To prove aggravated burglary, the State had to prove the defendant made an unauthorized entry into Ms. Horton's home with the intent to commit a felony and while defendant was armed with a dangerous weapon or armed himself once in the apartment. La. R.S. 14:60. Aggravated battery requires the State to prove defendant committed a battery, defined as the intentional use of force or violence upon the person of another, with a dangerous weapon. La. R.S. 14:33 and 14:34.

Under the Solomon rationale, the crime of aggravated burglary was completed when defendant entered Ms. Horton's apartment with the intent commit a battery while he was armed with a knife or arming himself with the knife after entering. The aggravated battery did not occur until defendant actually used force of violence upon Ms. Horton while armed with a dangerous weapon. Thus, the evidence required to support a conviction of aggravated

burglary would not have been sufficient to warrant the conviction of aggravated battery and the evidence required to prove the aggravated battery would not have been sufficient to warrant a conviction of aggravated burglary.   Therefore, defendant's convictions for aggravated burglary and aggravated battery are not barred by the principles of double jeopardy.[15]

Petitioner clearly has not established that he is entitled to federal *habeas corpus* relief based on his challenge to the jury instructions.  The United States Fifth Circuit Court of Appeals has noted:

> [A petitioner challenging the adequacy of jury instructions] faces a extraordinarily heavy burden.  Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief.  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of the state court's judgment is even greater than the showing required to establish plain error on direct appeal.
>
> Before a federal court may grant relief under 28 U.S.C. § 2254 based on alleged error in a state trial court's unobjected to charge, the error must be so egregious as to rise to the level of a constitutional violation or so prejudicial as to render the trial itself fundamentally unfair.  It must be established not only that the instruction was undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the fourteenth amendment, and that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.
>
> In applying these principles to the instructions in [a] case, we pay careful attention to the words actually spoken to the jury, for whether a defendant has been accorded his constitutional rights depends on the way in which a reasonable juror could have interpreted the instruction.   And we are mindful that a single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the entire charge.

---

[15] State v. Johnson, No. 05-KA-285, at 4-14; State Rec., Vol. III of V.

Tarpley v. Estelle, 703 F.2d 157, 159-60 (5th Cir. 1983) (internal quotation marks, brackets, ellipsis, citations, and footnote omitted); see also Galvan v. Cockrell, 293 F.3d 760, 764-65 (5th Cir. 2002). For the reasons explained in detail by the Louisiana Fifth Circuit Court of Appeal, the jury instructions in the instant case simply were not erroneous, much less so egregiously erroneous as to render petitioner's trial fundamentally unfair.

For the following reasons, the Court likewise rejects petitioner's related Double Jeopardy claim.

First, to the extent that petitioner is requesting that this Court review the state court's determination that his conviction did not violate double jeopardy protections under state law, the Court cannot oblige. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).

Second, to the extent that petitioner is arguing that his rights under the federal Double Jeopardy Clause were violated, that claim has no merit. The protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988). The United States Supreme Court has held:

> That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); see also Department of Revenue v. Montana, 511 U.S. 767, 769 n.1 (1994).

> The United States Fifth Circuit Court of Appeals has noted:
>
> We apply the Blockburger v. United States test to determine whether two different statutes punish the same offense.  Blockburger requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not".  If either statute contains no element not also found in the other statute, the statutes "fail" the Blockburger test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent".  Two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes. The Blockburger inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court.  Thus, the question is not whether *this* violation of [the first statute] also constituted a violation of [the second statute], but whether *all* violations of the former statute constitute violations of the latter.

United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) (emphasis in original) (footnotes omitted).

"A double jeopardy claim is a question of law."  Shute v. State of Texas, 117 F.3d 233, 238 (5th Cir. 1997).  Therefore, this Court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

As the Louisiana Fifth Circuit Court of Appeal correctly noted in its opinion, the aggravated burglary statute requires proof of additional facts which the aggravated battery statute does not, and *vice versa*.  For example, the aggravated burglary statute requires proof of an

"unauthorized entering of any inhabited dwelling, or any structure, water craft or movable where a person is present ...." La.Rev.Stat.Ann. § 14:60. The aggravated battery statute does not require such proof. On the other hand, the aggravated battery statute requires proof of an actual battery with a dangerous weapon, La.Rev.Stat.Ann. § 14:34, whereas the aggravated burglary statute does not. Therefore, petitioner's prosecution and convictions for violating both of those statutes did not violate the protections afforded by the federal Constitution's Double Jeopardy Clause.

Petitioner has failed to meet the AEDPA's requirement that he demonstrate that the state court's denial of his double jeopardy claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, his double jeopardy claim should be rejected.

### Excessive Sentences

Petitioner next argues that his sentences are excessive. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> In the second assignment of error, defendant asserts the sentences imposed, two of which are maximum sentences, are excessive.
> Defendant was sentenced to ten years for each aggravated battery conviction (counts one and two) and eighteen years for the aggravated burglary conviction (count three). Defendant received the maximum sentence of imprisonment for aggravated battery which has a sentencing range of zero to ten years with or without hard labor and a fine of up to $5,000.00. La. R.S: 14:34. He received a mid-range sentence for aggravated burglary which has a sentencing range of one to thirty years. La. R.S: 14:60.
> Defendant filed a motion to reconsider sentence claiming his sentence was excessive under various mitigating factors and seeking eligibility for good time, which the trial court had initially restricted. After a hearing, the trial court reinstated defendant's eligibility for good time but made no other changes to defendant's sentences.

In support of his argument of excessive sentences, defendant maintains the incident was a result of a love triangle, that he has completed an anger management course on his own initiative after the incident and that he is very remorseful. He maintains the victims' injuries were not extensive and cites numerous cases where the defendant received a lesser sentence under similar, as well as more egregious, circumstances. Defendant further claims he had no history of violence and had only one prior misdemeanor conviction twelve years before the present incident.

Both the United States and the Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La. App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La. 2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La. App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-1069.

Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Watts, 99-311 (La. App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La. 3/24, 00), 758 So.2d 145. The issue on appeal is whether the trial judge abused his discretion, not whether another sentence might have been more appropriate. Id.

Maximum sentences are reserved for those cases involving the most serious offenses and worse offenders. State v. Sullivan, 02-35 (La. App. 5 Cir. 4/30/02), 817 So.2d 335, 341. Defendant contends his offense is not the worst of its kind and that he is not the worst of offenders. He relies on his lack of a violent criminal history and asserts his victims' injuries were not that severe since they were treated and released from the hospital the same day.

The jurisprudence routinely upholds maximum sentences for aggravated battery even in cases involving first time offenders. See; State v. Sullivan, supra: State v. Knightshed, 00-1410 (La. App. 5 Cir. 3/28/01), 783 So.2d 501, 505.

Defendant came to Ms. Horton's apartment, broke down her door, and attacked her with a knife. She was cut several times and

required stitches to her wounds.  His attack on Eugene was even more vicious.  Eugene sustained lacerations above and below his right ear, to his right and left shoulder, to the middle of his back, to his chest, and to his finger.  The responding officer testified that when he arrived on the scene Eugene was covered with blood.  According to the officer, Eugene was bleeding profusely and appeared to be going into a state of unconsciousness.  The attending paramedic testified that Eugene was unstable and in shock when he arrived at the scene. He explained he was unable to obtain a blood pressure from Eugene and that it took approximately fifteen to twenty minutes of an IV before Eugene's blood pressure was normal.

Prior to imposing sentence, the trial judge obtained a pre-sentence investigative report.  In imposing the maximum sentence, the trial judge stated his reasons.  He stated defendant manifested deliberate cruelty to both victims as evidenced by the repeated stab wounds to both victims.  He noted defendant knowingly created a risk of death or great bodily harm to more than one person as there were two victims who were stabbed with a knife that had a four-inch blade.  The trial judge further found defendant used threats and actual violence toward Ms. Horton since he threatened to kill her while he was stabbing her.  Additionally, the trial judge noted that there was a restraining order against defendant at the time of the offense. Although the trial judge acknowledged the restraining order had not been served upon defendant, the trial judge found the fact Ms. Horton applied for a restraining order showed she was in fear of injury from defendant. Finally, the trial judge noted defendant's prior conviction for simple battery which had been reduced from aggravated battery. The trial judge also stated it considered defendant's statement to the court, the certificates defendant had earned, and the letters on defendant's behalf.

Based on the facts of this case, we conclude the trial judge did not abuse his discretion in imposing the maximum prison sentences for each of defendant's aggravated battery convictions. [FN] Defendant's ten-year sentence cannot be said to shock the conscience.  He was charged with a more serious offense, attempted second degree murder, and could have been so convicted.

[FN] Because defendant did not receive a fine, he did not technically receive the maximum sentence.  See, State v. Richardson, 01-239 (La. App. 5 Cir. 6/27/01), 790 So.2d 717, 720.

Defendant also challenges his mid-range 18-year sentence for aggravated burglary.  Based on the above-recited facts of this case, this sentence is not excessive.  See; State v. Owens, 32, 642 (La. App. 2 Cir. 10/27/99), 743 So.2d 890, State v. Hammond, 97-712 (La. App. 3 Cir. 1/7/98), 704 So.2d 1281, writ denied, 98-0374 (La. 6/5/98) 720 So.2d 679.  Defendant's 18-year sentence for aggravated battery [sic] does not shock the sense of justice or seem disproportionate to the severity of the offense.  State v. Lobato, 603 So.2d 739, 751 (La. 1992).[16]

Again, to the extent petitioner is arguing that his sentences are excessive or otherwise inappropriate under Louisiana law, that claim is not cognizable in this federal proceeding.  As previously noted, federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentences under state law.

Further, to the extent that petitioner is claiming that his sentences are excessive under the Eighth Amendment of the United States Constitution, his claim is without merit.  In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).  "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of

---

[16]  State v. Johnson, No. 05-KA-285, at 14-17; State Rec., Vol. III of V.

punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

- 22 -

In light of the <u>Rummel</u> finding that a life sentence was not excessive when imposed for a *nonviolent* offense where the offender had two prior *nonviolent* offenses, all of which were relatively minor offenses, this Court cannot conclude that petitioner's concurrent sentences of ten years for each of the aggravated battery convictions and eighteen years for the aggravated burglary conviction are grossly disproportionate in light of the grave and extremely violent nature of those offenses.  In that the sentences are not grossly disproportionate, this Court's "inquiry is finished." <u>Gonzales</u>, 121 F.3d at 942.  Because petitioner's sentences are not so excessive as to violate the United States Constitution, this claim must fail.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's motion to withdraw all of his claims except for the two claims in his original petition, Rec. Doc. 16, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that, in light of Rec. Doc. 16, petitioner's motion to amend his petition, Rec. Doc. 10, be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that petitioner's motions for summary judgment, Rec. Docs. 11 and 12, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

- 23 -

court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this sixth day of December, 2007.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**