```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**LEVY JOHNSON**                                            *       **CIVIL ACTION**

**VERSUS**                                                       *       **NO. 07-3370**

**STATE OF LOUISIANA**                         *       **SECTION "B"**

## ORDER AND REASONS

For the following reasons **IT IS ORDERED** that petitioner's § 2254 claims are **DISMISSED.** The instant objections (Rec. Doc. 19-21)[1] to the magistrate judge's report and recommendations (Rec. Doc. 18) are ripe for review without need of an evidentiary hearing.

## BACKGROUND

The Magistrate Judge adopted the following facts from the Louisiana Fifth Circuit Court of Appeal. At about 8:35 p.m. on February 24, 2003, Darlene Horton heard a knock at her door. She went to the door, but did not open it. The visitor asked for

---

[1] Although not stayed as a formal objection the magistrate's report and recommendations, these documents do address some of the issues raised in the report and recommendations. We treat them as objections.

"Donna." Ms. Horton stated that no one by that name lived in the home. She did not open the door because she could not see who the visitor was and did not recognize the voice. Instead, she directed the visitor to the apartment complex office. Immediately thereafter, the person crashed through the door and grabbed Ms. Horton. She recognized the attacker as Levy Johnson, a man she had previously dated but broke up with when he became abusive. He had a knife and cut her several times.

Claude Eugene, a friend who was in the bathroom at the time of the attack, heard Ms. Horton scream and came out to find defendant holding Ms. Horton by the neck and "jugging at her" with an unknown object. Eugene tried to intervene and a struggle ensued.  In the course of the struggle, Eugene was stabbed several times.  Meanwhile, Ms. Horton called 911. She then picked up a board from the broken doorframe and hit the defendant, forcing him to release Eugene. The defendant chased Ms. Horton into her bedroom, where he held a knife to her and told her he "ought to kill her." Ms. Horton ran out of the apartment and flagged down an approaching police officer.

Eugene had gone out to his truck to get a rag to bind his wounds and a shovel for protection. As he approached the apartment, he saw a police officer.  The officer ordered Eugene to put down the shovel, and he immediately complied. The officer also ordered the defendant, who was approaching Ms. Horton in an

2

aggressive manner, to drop the knife. At first the defendant did not comply.  However, at the second command, the defendant did as he was told and was handcuffed.  Emergency medical personnel arrived shortly thereafter and treated Ms. Horton and Eugene for lacerations. They were taken to the hospital, treated and released. The defendant was also taken to the hospital, and subsequently to jail.

At trial the judge, in giving the initial jury instructions, defined aggravated burglary as, "... the unauthorized entering of any inhabited [sic] dwelling, where a person is present, with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon." Prior to charging the jury, the trial judge held a conference outside the presence of the jury to discuss jury charges. During the conference the trial judge stated it was going to charge the jury that an essential element of aggravated burglary included that the defendant entered with the specific intent to commit attempted second-degree murder, attempted manslaughter, or aggravated battery. The trial judge enumerated the felonies because they were the applicable felonies in the present case, one being the charged crime of attempted second-degree murder, and the two others being responsive verdicts to attempted second-degree murder.  Defense counsel did not object to the proposed jury charge. The jury was then brought back into the courtroom and charged accordingly. The

trial judge instructed the jury that an essential element of aggravated burglary was that defendant entered the premises with the specific intent to commit attempted second-degree murder, attempted manslaughter, or aggravated battery. Again, defense counsel did not object.  Johnson was found guilty of aggravated battery and of aggravated burglary.

On direct appeal to the Louisiana Fifth Circuit Court of Appeal Johnson raised two issues.  The first issues was an interrelated challenge to the jury instructions and a double jeopardy issue, the second was that his sentence was excessive. The Fifth Circuit rejected both of these claims and the Louisiana Supreme Court denied his related writ application.  It is from this ruling that Johnson has filed his federal writ of habeas corpus.

## LAW AND ANALYSIS

### 1.      Erroneous Jury Instructions and Double Jeopardy

Petitioner's first claim is an interrelated challenge to the jury instruction and a double jeopardy issue.  The Louisiana Fifth Circuit on appeal denied this claim.  It should be noted that the Louisiana Fifth Circuit said, "defense counsel did not object to the proposed jury charge" which was noted in Magistrate Shushan's Report and Recommendations (Rec. Doc. 18, pg. 9). However in defendant's petition for writ of habeas corpus (Rec. Doc. 17, pg. 13) and in the State's response (Rec. Doc. 13, pg.

7) it is noted that the defendant's counsel objected to the definitions of aggravated burglary in the jury instructions. Without an objection at trial, this claim would still be permissible under the holding of *State v. Hubbard*. There, the Louisiana Fifth Circuit held that the absence of a contemporaneous objection may be over looked if the error violates fundamental due process requirements and the record is sufficient to establish the error without the need for a post-trial evidentiary hearing. 708 So.2d 1099, 1107 (La. App. 5th Cir. 1/27/98).

    The state court indictment charges the commission of an aggravated burglary "while the offender was armed with a dangerous weapon." Aggravated burglary is defined in Louisiana as: "…the unauthorized entering of any inhabited dwelling…where a person is present, with the intent to commit a felony or any theft therein, if the offender, (1) is armed with a dangerous weapon; or (2) after entering arms himself with a dangerous weapon; or (3) commits a battery upon any person while in such place, or in entering or leaving such place." La.R.S. 14:60. Under the indictment the State made it clear that it was relying of subsection (1), armed with dangerous weapon, of La.R.S. 14:60, as opposed to subsection (3), committing a battery. On its own initiative the trial court amended the definition of aggravated burglary to include a reference to attempted manslaughter or

aggravated battery as the lesser included offenses to the charge of aggravated burglary.  Despite the trial court inclusion of this extra language and adding the element that the defendant entered with the specific intent to commit attempted second-degree murder or attempted manslaughter, or aggravated battery, the state did not present its case in that manner.  The state reiterated to the jury throughout the trial that it was going to prove the defendant was armed with a dangerous weapon during the commission of this crime, pursuant to subsection (1) or (2) of La.R.S. 14:60.

The standard for evaluating a jury instruction is whether, when reading the charges as a whole, reasonable persons of ordinary intelligence would understand the charge. *State v. West*, 568 So.2d 1019, 1023 (La. 1990).  A review of the complete jury charge in this case shows that there was no error as to the charge for aggravated burglary.  The trial judge instructed the jury that in order to find the defendant guilty of aggravated burglary, it had to find that the defendant; (1) entered an inhabited dwelling, (2) without authorization, (3) while a person was present in the dwelling, (4) with the intent to commit a felony, and (5) while armed with a dangerous weapon or armed himself with a dangerous weapon after entering.  It seems evident that the trial judge's reference to the aggravated battery was an attempt to enumerate the applicable felonies relating to the

6

essential element of the offense that requires proof of specific intent to commit a felony or theft within the dwelling.  As such there was no error in the trial judge enumerating applicable felonies for the essential element of aggravated burglary.

Tied to Petitioner's claim that the jury charge was erroneous is a claim that the charges subjected him to double jeopardy.  Petitioner asserts the jury was instructed that it could use aggravated battery as both an offense (as a lesser included offense of second-degree murder) and as an enhancing element of aggravated burglary.  He further claims that the jury's verdict of aggravated battery shows that they rejected the "specific intent" theory of murder, which the state preceded under, and as such, subjected him to double jeopardy.  In *State v. Marshall* the Louisiana Supreme Court held that Marshall could not be punished for both attempted first-degree murder during an armed robbery and armed robbery. 660 So.2d at 828.

The Louisiana Supreme Court stated in *State v. Miller*, 571 So.2d 603 (La. 1990), that there are two tests to use when determining whether or not double jeopardy applied.  The first test is derived from the United States Supreme Court decision in *Blockburger v. United States*, which states that double jeopardy does not apply when one of the charged statutory offense requires the proof of an element the other does not.  284 U.S. 299, 304 (1932).  The facts of the present case fail the *Blockburger* test

because there are distinct elements required to prove the aggravated burglary charge from the attempted second-degree murder charge.  For the burglary the state had to prove that Petitioner entered the apartment, uninvited, while armed with a knife, intending to commit a felony.  In order to prove the second-degree murder charge the state must prove that Petitioner intended to kill the victims.  It is merely coincidental that a lesser-included offense of second-degree murder is aggravated battery.  The state indicted and presented its case-in-chief to the jury, alleging that the aggravated burglary was supported by the fact that the defendant was armed with a dangerous weapon.  Additionally, there was sufficient evidence to convict for aggravated burglary once Petitioner broke down the victim's door.  As such, there is no double jeopardy issue under the *Blockburger* test.

The second test enumerated by the Louisiana Supreme Court in *Miller* is the "same evidence" test. The "same evidence" test requires that if the evidence required to support one of the charged offenses would have been sufficient to support the other charged offense, then double jeopardy prohibits the State from charging the defendant with both offenses.  This test is determined by the evidence required to convict, not the evidence actually presented at trial.  *Miller*, 571 So.2d at 606.  In this case the evidence presented at trial to convict on the aggravated

burglary would not have been sufficient to also find the defendant guilty of attempted second-degree murder.  Based on what evidence would be needed to convict on burglary, once the defendant crashed through the front door, and revealed he was armed with a knife the burglary was completed.  The evidence established up to this point would not sustain a conviction on attempted second-degree murder, especially given the fact that state declared on the record that it intended to rely on a specific intent to kill to prove attempted second-degree murder, not the felony murder rule.   Based on the fact that both aggravated battery and aggravated burglary have different elements on the charged offenses, there is no double jeopardy violation.

**2.      Excessive Sentence**

Petitioner also urges that his sentences are excessive.  He was sentenced to ten years for each aggravated battery count and eighteen years for the aggravated burglary conviction.  He received the maximum sentence of imprisonment for aggravated battery, which has a sentencing range of zero to ten years with or without hard labor and a fine up to $5,000.00.  In addition, he received a mid-range sentence for aggravated burglary which has a sentencing range of one to thirty years.  Three factors that are considered in reviewing a trial court's sentencing discretion are (1) the nature of the crime, (2) the nature and

background of the offender, and (3) the sentence imposed for similar crimes by the same court and other courts. *State v. Watts*, 746 So.2d 58, 64 (La. App. 5th Cir. 8/31/99).  Further maximum sentences are reserved for those cases involving the most serious and worst offender.  However maximum sentences are routinely upheld for aggravated battery even in the cases involving first time offenders. *State v. Sullivan*, 817 So.2d 335, 341 (La. App. 5th Cir. 4/30/02).   While imposing sentencing the trial judge stated his reasons, noting the defendant manifested deliberate cruelty to both victims, he found that the defendant used threats and actual violence toward Ms. Horton, and he noted that there was a restraining order against the defendant at the time of the offenses.  Further the trial court noted the defendant's prior conviction for simple battery, which had been reduced from aggravated battery.

The Eighth Amendment to the United States Constitution "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983).  In interpreting *Solem*, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive by first comparing the severity of the offenses to the sentence imposed. *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).   If the court determines that the sentence is grossly disproportionate

then the court will compare sentences for similar offenses within the jurisdiction and for the same crime in other jurisdictions. *Id.*

The benchmark for disproportionate punishment under the Eighth Amendment was established in *Rummel v. Estelle*.  *United States v. Gonzales*, 121 F.3d  928, 942 (5th Cir. 1997).  In *Rummel* the Supreme Court upheld a life sentence for obtaining $120.75 under false pretenses.  The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check.  *Rummel v. Estelle*, 445 U.S. 263 (1980).

Based on the benchmark set in *Rummel*, it does not seem unreasonable that the concurrent sentences of ten years for both aggravated battery charges and eighteen years of the aggravated burglary conviction are grossly disproportionate in light of the grave and extremely violent nature of those offenses.  Since the sentences are not grossly disproportionate, Petitioner's claims that his sentences are excessive are denied.

**CONCLUSION**

Based on foregoing, this Court holds that Petitioner Levy Johnson's § 2254 claims are **DENIED**.

New Orleans, Louisiana, this 31ST day of March, 2008.

IVAN L. R. LEMELLE
UNITED STATES DISTRICT JUDGE